IN AND FOR THE CIRCUIT COURT OF THE TENTH
JUDICIAL CIRCUIT, IN AND FOR POLK COUNTY, FLORIDA

IN RE: ALLERGAN BIOCELL TEXTURED      CASE NO: _____
BREAST IMPLANT PRODUCTS LIABILITY

NICOLE MALKEMES

     Plaintiff,

vs.

ALLERGAN, INC., f/k/a INAMED             **COMPLAINT AND DEMAND**
CORPORATION,                                     **FOR JURY TRIAL**
f/k/a MCGHAN MEDICAL CORPORATION,
ALLERGAN USA, INC., and ALLERGAN PLC.,

     Defendant.

_____/

Plaintiff Nicole Malkemes ("Malkemes"), by and through the undersigned attorney, hereby sues Defendants Allergan, Inc., Allergan USA, Inc., and Allergan plc (collectively "Defendants" or "Allergan") for personal injuries suffered as a proximate result of Plaintiff Malkemes being implanted with the defective and unreasonably dangerous product Allergan Biocell Textured Breast implant:

**THE PARTIES**

1.      Plaintiff Malkemes is a resident of Lakeland, Polk County, Florida, and is otherwise *sui juris.*

2.      Allergan manufactured and sold Biocell saline-filled and silicone-filled breast implants and tissue expanders.

3.      Defendant Allergan, Inc., formerly known as Inamed Corporation ("Inamed") (formerly known as McGhan Medical Corporation) is a wholly owned subsidiary of Allergan plc and is incorporated under the laws of Delaware. Allergan Inc.'s principal place of business is in New Jersey, where its U.S.A. administrative offices are located.

4.      Defendant Allergan USA, Inc., is a wholly owned subsidiary of Allergan plc, and is incorporated under the laws of Delaware, with a principal place of business located at 5

1

Giralda Farms, Dodge Drive, Madison, NJ 07940, where Allergan's administrative offices are located.

5.      Defendant Allergan plc is a publicly traded corporation whose headquarters are located at Clonshaugh Business & Technology Park Dublin, D17, E400, Ireland. Allergan's administrative headquarters in the United States are located 5 Giralda Farms, Madison, New Jersey 07940.

6.      At all times material hereto, each Defendant acted as alter ego and agent of the others. Each of the above-named Defendants are joint tortfeasors and  jointly and severally liable to Plaintiff.

JURISDICTION AND VENUE

7.      Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332, because Plaintiff is a resident of Florida, and Defendants are diverse foreign entities. Defendant Allergan, Inc. is a Delaware corporation with its principal place of business in New Jersey. Defendant AbbVie, Allergan's corporate successor, is a Delaware corporation, with its principal place of business in Illinois. Furthermore, the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.00.

8.      Venue in this jurisdiction is proper because a substantial part of the events or omissions on which the claims asserted herein are based occurred in this District.

FACTUAL BACKGROUND

9.      Allergan manufactures and sells BIOCELL© saline filled and silicone-filled breast implants and tissue expanders ("BIOCELL©").

10.      The Medical Device Amendments ("MDA") of 1976, 21 U.S.C. § 360c et. seq., to the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 et. seq., "imposed a regime of detailed federal oversight" that authorized FDA to regulate medical devices. Riegel v. Medtronic, Inc., 552 U.S. 312, 316 (2008).

11.      Under the MDA, medical devices are categorized into one of three regulatory classes-Class I, Class II, or Class III-based on their level of risk and the controls needed to reasonably assure their safety and effectiveness. 21 U.S.C. § 360c. Class III medical devices are subject to Premarket Approval (PMA), a comprehensive and rigorous process that receives the highest level of regulatory scrutiny and arduous federal oversight compared to that of other

medical devices. Id. §§ 360c(a)(l)(C); 360e. The PMA regime imposes federal requirements specific to individual devices.

12. Pursuant to the PMA process, a manufacturer must provide FDA with full reports of all studies and investigations of the device's safety and effectiveness that have been published or should reasonably be known to the applicant; a 'full statement' of the device's 'components, ingredients, and properties and of the principle or principles of operation'; 'a full description of the methods used in, and the facilities and controls used for, the manufacture, processing, and when relevant, packing and installation of, such device'; samples or device components required by the FDA; and a specimen of the proposed labeling. § 360e( c )(1 ).

13. The Food & Drug Administration ("FDA") grants PMA only if the manufacturer has provided "reasonable assurance" that the device is safe and effective under the conditions of use included on the label and determined that the proposed label is not false or misleading. 21 U.S.C. § 360e( d)(2). "

14. The FDA grants PMA only if the manufacturer has provided "reasonable assurance" that the device is safe and effective under the conditions of use included on the label and determined that the proposed label is not false or misleading. 21 U.S.C. § 360e( d)(2)

15. The FDA requires a device that has received premarket approval to be made with almost no deviations from the specifications in its approval application, for the reason that the FDA has determined that the approved form provides a reasonable assurance of safety and effectiveness." Riegel v. Medtronic, Inc., 552 U.S. 312, 323 (2008)

16. Manufacturers must also submit adverse events reports, which are made publicly available through an online database called the Manufacturer and User Facility Device Experience ("MAUDE"). 21 C.F.R. §§ 803.10; 803.50

17. Once approved, the device may be manufactured, advertised, and distributed to the public, but those marketing activities may not be done in a manner 'inconsistent with ... the [premarket] approval order for the device. 21 C.F.R. § 814.80).

18. In August 1999, the FDA issued a final rule requiring all saline-filled implants to receive Premarket Approval ("PMA") rather than clearance through the 510(k) process. Allergan's predecessor filed a PMA application to reclassify the McGhan RTV implants.

19. In May 2000, FDA approved the application and granted PMA for the McGhan RTV implants.

3

20.     In May 2000, FDA also granted PMA for the first segment of textured BIOCELL implants, the saline-filled breast implants.

21.     In November 2006, FDA granted PMA for the second segment of textured BIOCELL implants, the silicone-filled breast implants.

22.     In February 2013, FDA granted PMA for the third segment of textured BIOCELL implants, the highly cohesive anatomical shaped silicone-filled breast implants.

23.     On July 24, 2019, Allergen announced a worldwide recall of BIOCELL after the U.S. Food and Drug Administration ("FDA") called for the action following new information that Allergen's BIOCELL implants were tied to a vast majority of cases of breast implant-associated anaplastic large cell lymphoma (BIA-ALCL") not seen with other textured implants. Allergan announced that BIOCELL© would no longer be sold or distributed in any market manufactured and sold BIOCELL saline-filled and silicone-filled breast implants and tissue expanders ("BIOCEL").

24.     BIA-ALCL is a type of non-Hodgkin's lymphoma (cancer of the immune system). In most cases, BIA-ALCL is found in the scar tissue and fluid near the implant, but in some cases, it can spread through the body. Even if an individual's risk of developing BIA-ALCL is considered low, this cancer is serious and can lead to death, especially if not treated promptly. BIA-ALCL can be treated with surgery to remove the implant and surrounding scar tissue, and in some patients, may also require treatment with chemotherapy and radiation treatment.

25.     The recommended diagnostic testing for BIA-ALCL is invasive. The Directions for Use ("DFU") for doctors provides in pertinent part: "When testing for ALCL, collect fresh seroma fluid and representative portions of the capsule, and send for pathology tests to rule out ALCL." The symptoms of BIA-ALCL may occur well after the surgical incision has healed, often years after the implant placement.

26.     On May 8, 2020 Defendant AbbVie, Inc. completed its purchase of Allergan. On September 29, 2020, the Food and Drug Administration ("FDA") published it's black box warning pertaining to risks associated with breast implants, including breast implant-associated anaplastic large cell lymphoma (BIA-ALCL) and systemic symptoms commonly referred to as breast implant illness (BII) that some patients attribute to their implants.

27.     At all relevant times, each Defendant acted in all aspects as the agent and alter ego of each other. The combined acts and/or omissions of each Defendant resulted in injuries to

the Plaintiffs. Each of the above-named Defendants is a joint tortfeasor and/or co-conspirator and is jointly and severally liable to Plaintiffs for the negligent acts and omissions alleged herein. Each of the above-named Defendants directed, authorized, and/or ratified the conduct of each and every other Defendant.

## FACTS OF THE CASE

28.     On June 22, 2018, Plaintiff Malkemes underwent Bilateral Breast implant surgery at Lakeland Regional Health Medical Center (LRHMC), in Lakeland, Polk County, Florida, whereby a set of Allargen textured, silicone breast implants, included in the July 24, 2019 worldwide recall.

29.     On August 11, 2018, at 11:01 AM, Malkemes presented to LRHMC Emergency Room, complaining of swelling to her left breast with fever, and shortness of breath (SOB), and was diagnosed with Cellulitis of the left breast, fever, S/P Breast Augmentation. A Sepsis protocol was started, including IV antibiotics administered.

30.     On August 11, 2018, at 12:11 PM, Plaintiff was admitted to  LRHMC with a diagnosis of "Cellulitis", no imaging studies were done on this date.

31.     On August 14, 2018, Malkemes was taken to the LRHMC Operating Room, the left breast implant was removed, and a thorough wash of the left breast cavity was performed prior to a new left implant was implanted: serial number: 21223631. Malkemes was discharged with a drain.

32.     On September 5, 2018, patient presented to the Watson Clinic Women's Center, with swelling and pain of the left breast, and underwent guided ultrasound, whereby 6 ounces of fluid with silicone was drained from her left breast.

33.     Around September/October 2018, Plaintiff developed new onset respiratory symptoms (Asthma), and new onset skin conditions (Eczema), which she never suffered from previously.

34.     Around February 2019, Plaintiff quit her job as an ER nurse, because she was often too sick to work, and necessarily calling in sick repeatedly. Malkemes then took less physically taxing employment as a case manager, which required fewer hours, and little to no patient care.  Malkemes' skin conditions and respiratory symptoms contained throughout 2019.

35.     On July 2, 2020, Malkemes developed new onset double vision and migraine headaches. On July 20, 2020, Malkemes presented to Watson Clinic urgent care, and underwent a Cat Scan (CT) of her right breast, which showed that her breast implant was also ruptured.

36.     On July 15, 2020, Malkemes was hospitalized at LRHMC with severe shortness of breath and difficulty breathing, and placed on Bilevel positive airway pressure (BiPAP), which is a non-invasive positive pressure ventilator, used when a person is still able to breathe on their own, but needs breathing support, and is administered through a face mask, nasal mask, or helmet.

37.     On July 30, 2020, Malkemes presented to Watson Clinic urgent care, with tunnel vision, weakness, HTN, drooling, and a severe headache. A head CT was performed, which was non-remarkable/negative. Malkemes also tested negative for Covid, at this time.

38.     Around the end of September 2020, Malkemes collapsed while working at Winterhaven Hospital in Winterhaven Florida, with RR 51, and HR 160. Malkemes was repeatedly losing her balance, experiencing severe brain fog and memory loss, and suffering with nerve pain, which caused repeated sensations of jolts of lightening up her back.

39.     On or around October 4, 2020, Malkemes had both implants removed at LRHMC, and is left with lumpy, hard, disfigured breasts.

40.     A few weeks later, around the middle of October 2020, Malkemes was admitted to LRHMC, with severe shortness of breath, HTN, O2 sat 62%, and a fever of 104. Malkemes developed Covid, worsening and exasperating her existing respiratory symptoms and causing her to have severe difficulty breathing.

41.     Malkemes was admitted into the ICU from November 7, 2020, until the day before Thanksgiving 2020, suffering from low oxygen saturation and severe SOB, repeated sensations of lightning strikes/nerve pain up her back, difficulty swallowing, severe chest pain, weakness to her right side, with her right foot contracting (curling up), and her right hand temporarily freezing up. Malkemes was repeatedly dropping objects, falling, extremely emotional, and suffering from slurred speech. Malkemes was also suffering from rashes on her chest and face, with severe burning pruritus, hair loss, and severe pain from head to toes- throughout her entire body.

42.     To date, Malkemes suffers from vision loss, and blurry vision, with inflamed optic nerves, headaches, memory loss, rashes/itchy all over her body, SOB (and still uses an Incentive

Spirometer daily), vertigo/loss of balance, stomach pain/diarrhea, "lightning strikes up my back", fatigue, and near-constant breast pain. Now, Plaintiff's symptoms lessen and increase, with some good days, some bad days, and some very bad days.

## ARGUMENT

## COUNT I - MANUFACTURING DEFECT

43.     Plaintiff repleads, realleges and incorporates by reference paragraphs 1 through 42, inclusive, as though fully set forth herein.

44.     In Florida, manufacturers have a Federal law duty, pursuant to MDA, 21 U.S.C. § 360c et. seq, to ensure that their commercially available products are safe to use. Here, Defendants breached its duty to Plaintiff by failing to make proper adverse event reports to the FDA, pursuant to the Federal Statute.

45.     Defendants' failure to make proper adverse event reports to the FDA directly and approximately caused her to suffer serious and permanent injuries, *to wit:*

a.     Plaintiff is suffering from Breast Implant Illness (BII). Her symptoms: skin rashes, neurological symptoms and deficits- including but not limited to brain fog and memory problems, respiratory symptoms, and systemic, generalized inflammation/ Plaintiff will experience flare ups, causing varying degrees of incapacitation, for the rest of her life.

b.     Plaintiff's left breasts is permanently disfigured, with scars and thickened hardened tissue formed in the breast, and contractures of the small amount of firmly scarred breast tissue that distorts the appearance of her breasts.

c.      Plaintiff is at risk of developing Breast Implant-Associated Anaplastic Large Cell Lymphoma (BIA-ALCL), a non-Hodgkin's lymphoma or type of T-cell lymphoma (cancer of the immune system). Symptoms of BIA-ALCL tend to develop on average, 7-10 years after the implant is placed, and will require long term medical monitoring.

46.     Plaintiff's Manufacturing Defect Claims Are Not Preempted, as The PMA regime inherently imposes federal requirements on manufacturers of medical devices, and Defendant violated Florida state law that parallels Federal law. "common law claims could still be pursued by plaintiffs if the claims were based on the violation of federal law" Mink v. Smith & Nephew, Inc., 860 F.3d 1319, 1325 (11th Cir. 2017).

7

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury in this action for all issues so triable.

**WHEREFORE,** Plaintiff Nicole Malkemes demands judgment against Defendants Allergan, Inc., Allergan USA, Inc.,  and Allergan PLC, for all actual and compensatory damages she suffered, together with interest, if applicable, for all costs of this action, and for any other such further relief as this Honorable Court and/or jury may deem just and proper.

On Date: August 9, 2022

/s/ Jennifer Ford, Esq.
Jennifer Ford, Esq.
Florida Bar No. 1003864
1 East Broward Blvd., Suite 700
Fort Lauderdale, FL 33301
Office: (800) 961-1909
Cell: (954) 588-8831
Jennifer @jenniferford.lawyer

8